PATRICK H. CROGHAN, PLAINTIFF, DEFENDANT IN ERROR, v. ROBERT J. F. SCHWARZENBACH, DEFENDANT, PLAINTIFF IN ERROR.

Submitted March 23, 1911—Decided June 15, 1911.

Where defendant's agent told an employe of the defendant to wash the bleeding finger of another employe, and also told him to look for bandages in a medicine chest containing medicines for first aid for persons injured in the factory, and the employe so directed negligently used the contents of a bottle of carbolic acid in dressing the wound, by reason of which the finger was gangrened and had to be amputated—*Held*, that a jury could infer that the use of a medicine found within the medicine chest was within the authority given by the defendant's agent to the employe to dress the wounded finger.

On error to Hudson County Circuit Court.

Before GUMMERE, CHIEF JUSTICE, and Justices REED and TRENCHARD.

For the plaintiff, defendant in error, *Queen & Stout.*

For the defendant, plaintiff in error, *Collins & Corbin.*

The opinion of the court was delivered by

REED, J. The plaintiff, while employed by the defendant, had a finger injured by a pair of scissors which he used in his work. The scissors punctured his finger so that it bled. He sought a Mr. Albach, who was the superintendent of the defendant's works, and showed him his finger. Mr. Albach said to the plaintiff, "Wait, I will have that dressed for you."

There was kept in the factory a medicine chest, in which was kept bandages and some remedies, among which was a bottle of carbolic acid. These remedies were kept for use as first aid for persons injured in the works of the factory. This chest was in the charge of an employe named Murphy.

Murphy, who had the key of the chest, was not in the factory at the time of the accident. Mr. Albach spoke to another employe named Streuter, asking him to open the medicine chest, and Streuter did so by taking out three screws. Mr. Albach also spoke to another employe named Kreutzer, a German, who proceeded to wash and bandage the finger of the plaintiff. In doing this, Kreutzer applied some of the contents of the bottle of carbolic acid to the injured finger. It appears that carbolic acid, in an extremely diluted shape, is a usual application for wounds of this character. The testimony is, however, that Kreutzer seems to have used the contents of the bottle in the medicine chest, which was ninety per cent. pure carbolic acid without any, or insufficient, dilution. The effect of this application seems to have caused a gangrenous condition of the finger, which resulted in the necessity of its amputation.

The purpose of this action is to hold the defendant liable for the result of this act of Mr. Kreutzer's.

The exceptions sealed upon the trial were to the refusal of the trial court to direct a verdict for the defendant and exceptions to certain portions of the charge.

The point insisted upon in all these exceptions is that Kreutzer was not acting within the scope of any authority conferred upon him by the defendant, or its agent, when he applied the carbolic acid. The only authority of Kreutzer's, if it existed, was contained in the directions given him by Mr. Albach. There is no insistence by the defendant that Albach was not a representative of the defendant in his direction to Kreutzer to care for the injured finger. The insistence of the defendant is that the extent of Albach's direction to Kreutzer was that he should wash the finger of the plaintiff and apply a bandage.

It is contended that the trial court erred in refusing to direct a verdict for the defendant, and erred in leaving to the jury the determination of what was said by Albach to Kreutzer, and the inference to be drawn therefrom, and leaving to the jury the question whether the words "treat the finger" or the words "dress the finger," if used, might be understood by

a reasonable man to mean that he should treat the wounded finger in the ordinary way, if there be an ordinary way, by the use of medicines as well as bandages.

So the question involved is limited to the point whether there was that in the testimony which would support a theory that Kreutzer, from what Albach said to him, could have reasonably inferred that he was directed to use in his discretion any medicine found in the medicine chest.

In respect to what was said by Albach to Kreutzer, it appears that he spoke to him in German, and the plaintiff, who heard the conversation, being ignorant of that language, has no knowledge of its import, except from his inference from what Kreutzer did.

Mr. Albach says that he told Kreutzer to wash off the finger; and Mr. Kreutzer says that Albach said to him that there was a little boy standing outside on the floor, and for him to go out to the sink and wash his finger.

The trial court charged that if that was the extent of the language used, there could be no recovery against the defendant; but if the direction was to bandage, dress or treat the wound, it was a question for the jury to say whether the inference would arise that Kreutzer could use a medicine in his treatment.

It appears, however, that both Albach and Kreutzer had in mind that something more than a mere washing of the finger was to be done, for both testified that Kreutzer asked for bandages, and Albach told him that all the stuff was in the medicine chest, from which chest Kreutzer got the material for bandaging the wound.

So there was an implied direction or permission to Kreutzer not only to wash the finger but to bandage it. This constituted, undoubtedly, a dressing.

In the chest, from which the wadding was obtained, were the medicines used in dressing wounds, and known to be used —just as the bandages were—for that purpose. Mr. Albach knew that these medicines, including salves and carbolic acid, were among the remedies. It would seem that Kreutzer could draw the inference that such curative agents were there for the

purpose of use in the dressing of wounds, and that Mr. Albach should have known that Kreutzer could draw such an inference.

In the absence of any warning to Kreutzer against the employment of anything but water in dressing the wound, I think the jury had a right to draw an inference that Kreutzer, from what Albach said to him in the circumstances, could conclude that he was to use in dressing the wound any article found in the medicine chest; and that his ignorant use of the carbolic acid was imputable to the defendant, whose agent selected and clothed Kreutzer with the duty of treating the wound.

The judgment should be affirmed.